UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SHAKOY R. GALE,

      Plaintiff,

v.                                                    Case No. 4:19-cv-55-WS-HTC

DEPARTMENT OF
CORRECTIONS, et al.,

      Defendants.

_____/

<u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Defendant Centurion of Florida, LLC's ("Centurion") motion to dismiss Plaintiff Shakoy R. Gale's amended complaint (ECF Doc. 13). ECF Doc. 64. On October 6, 2020, the Court directed Plaintiff to respond to Defendant's motion if he intended to oppose the motion *and* the Court would treat the motion as unopposed if Plaintiff failed to file a response. ECF Doc. 65. Despite the Court's specific instruction, Plaintiff did not file a response.[1] Upon

---

[1] *See also,* Rule 7.1(H) ("[t]he Court may grant a motion by default if an opposing party does not file a memorandum as required by this rule." N.D. Loc. R. 7.1(H). "The local rule permits the district court to treat the defendants' motion to dismiss as unopposed, and under it the district court would be justified in deciding the motion on the papers before it." *Giummo v. Olsen*, 701 F. App'x 922, 924 (11th Cir. 2017) (citation omitted) (internal quotations omitted).

consideration, the undersigned respectfully recommends that Centurion's motion to dismiss be GRANTED.

## I.    BACKGROUND

Plaintiff, an inmate of the Florida Department of Corrections ("FDOC"), currently incarcerated at Wakulla Correctional Institutional ("Wakulla C.I."), proceeding *pro se* and *in forma pauperis*, initially brought this action against Corizon Medical Services ("Corizon") and seven other Defendants.  However, all Defendants have been dismissed on screening or on summary judgment, *see* ECF Docs. 62, 70, other than Centurion, which was substituted for Corizon, *see* ECF Docs. 40, 41, as Centurion was the medical provider for the FDOC during the relevant time period.

The undersigned accepts the following allegations as true for the purpose of this report and recommendation.[2]  Plaintiff is highly allergic to peanuts and requires special dietary monitoring.  ECF Doc. 13. at 6.  As a result, Plaintiff's FDOC medical file contains his allergy warning, and Plaintiff wears an allergy warning medallion when receiving his meals.  *Id.* at 6.  On January 17, 2017, Plaintiff suffered an allergic reaction caused by peanut butter in the pudding and went into anaphylactic shock, causing his esophagus to swell and close.  *Id.* at 9.  He could not breathe and

---

[2] For purposes of this report and recommendation, the undersigned summarizes only those allegations related to the Plaintiff's claims against Centurion (identified as Corizon in the amended complaint).

subsequently passed out. *Id.* Security personnel notified the Centurion medical department, and a nurse with a trauma kit was sent to the scene of the incident; however, upon arrival, "the nurse . . . discovered that the trauma kit did not have the needed epinephrine to counter the allergic reaction . . . ." *Id.*

Consequently, medical and security staff rushed Plaintiff to the medical building, "which is located on the other end of the compound," where Centurion's Director of Nurses, P. Buhler, gave Plaintiff an epinephrine injection. *Id.* at 10. However, Buhler "only injected 0.1 mg of epinephrine, instead of the normal 0.3 mg dosage needed to overcome the symptoms related to an allergic reaction." *Id.* As a result, Plaintiff continued to suffer from his allergic reaction, and he was subsequently transferred to Tallahassee Memorial Hospital. *Id.*

In route to the hospital, a Wakulla Fire and Rescue Emergency Technician performed an emergency tracheotomy "due to respiratory distress, tachycardia, angioedema, and other major clinical signs of severe allergic reaction." *Id.* Upon arrival at the hospital, Plaintiff was exhibiting abnormal vital signs, and the hospital staff removed the breathing tube. *Id.* at 11. When the tube was being removed, "[Plaintiff's] vocal cords were strained, and his nasal cavity was [a]ffected." *Id.* Plaintiff remained in the hospital for eight (8) days. *Id.*

Plaintiff is now "permanently disfigured from the tracheotomy," and he is still suffering from the strained vocal cord and nasal cavity issues, both of which "could

have been avoided if proper care would have been administered at the prison by [Centurion] employees." *Id.* at 11. Plaintiff further asserts he "continues with ongoing issues that are associated with the incident at hand." *Id.* at 11.

Based on this incident, Plaintiff alleges Centurion violated his Fifth, Eighth, and Fourteenth Amendment rights because Centurion was deliberately indifferent to Plaintiff's peanut butter allergy. *Id.* at 13. Plaintiff alleges Centurion knew of his allergy and "his need for medical care and treatment" but "failed to ensure that proper medical attention would be made available in case of [an] emergency" and "did not respond reasonably to the risks associated" with Plaintiff's condition. *Id.* at 9, 13. Plaintiff asserts these risks "constituted the need not only to be knowledgeable regarding what to do in case of [an] emergency, but [the risks] also constituted having supplies readily available." *Id.* at 13.

Specifically, Plaintiff alleges Centurion's failure to include epinephrine, which "a medically recorded inmate needed," in its trauma bag constitutes deliberate indifference. *Id.* at 9. Plaintiff contends Buhler, as an employee of Centurion, "was responsible for ensuring that the epinephrine is always stocked inside the trauma kit" and "for knowing that the proper dosage of epinephrine is 0.3 mg." *Id.* at 10. Because of these failures, Plaintiff experienced a "delay of access to the needed treatment" for a "medical need [that] required timeliness" and "a denial of access to

medical personnel qualified to exercise judgment about a . . . dosage amount." *Id.* at 14.

Plaintiff also alleges the "Defendant's [sic] had actual knowledge that there were deficiencies in the medical care system that created the risk of the kind of harm" that Plaintiff experienced. *Id.* at 13. Further, the "Defendant's [sic] violated published professional standards of care and the prison's own procedures [f]or medical care by not having the epinephrine readily available and stocked within the trauma kit, and by not being properly trained as to dosage amounts." *Id.* Plaintiff alleges these "systemic deficiencies . . . made suffering inevitable," showing "an absolute disregard" for "Plaintiff's peanut butter allergy." *Id.* at 14. As relief, Plaintiff seeks compensatory and punitive damages. *Id.* at 12.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at

555 (citation omitted).  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true.  *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

In reviewing a *pro se* plaintiff's pleadings, a court must liberally construe the plaintiff's allegations.  See *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).  However, the duty of a court to construe *pro se* pleadings liberally does not require the court to serve as an attorney for the plaintiff.  *Freeman v. Sec'y, Dept. of Corr.*, 679 F. App'x 982, 982 (11th Cir. 2017) (citing *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## III.    DISCUSSION

As stated above, Plaintiff alleges his constitutional rights were violated because Centurion's medical staff was deliberately indifferent to his serious medical need.  Namely, Plaintiff alleges Centurion employees failed to include epinephrine

in the trauma bag and failed to administer the correct dosage of epinephrine. Thus, Plaintiff seeks to hold Centurion liable for the conduct of its employees. However, "[w]hen a private entity ... contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983 and "liability under § 1983 [against a municipality] may not be based on the doctrine of respondeat superior." *Craig v. Floyd Cty., Ga.,* 643 F.3d 1306, 1310 (11th Cir. 2011).

Instead, for Plaintiff to state a claim against Centurion for violating the Eighth Amendment, Plaintiff must allege facts sufficient to show Centurion had a "policy or custom" of deliberate indifference that led to the violation of his constitutional right. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978). Additionally, before even getting to a custom a policy, Plaintiff must first allege facts sufficient to show he suffered a constitutional deprivation. *See Rooney v. Watson*, 101 F.3d 1378, 1381-82 (11th Cir. 1996) ("our finding that the Rooneys did not suffer any constitutional deprivation makes it unnecessary to consider Volusia County's policy or custom").

As set forth below, the undersigned recommends dismissal of Plaintiff's claim against Centurion because (1) Plaintiff has failed to allege facts sufficient to establish an underlying constitutional violation by a Centurion employee and (2) Plaintiff has

failed to allege the existence of a Centurion policy or custom which caused a constitutional violation.[3]

## A.    Lack of an Underlying Constitutional Violation

A § 1983 claim may arise when prison officials act with deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To state a claim for deliberate indifference to a serious medical need, Plaintiff must allege facts sufficient to satisfy two components: one objective and the other subjective. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994). The objective element is met by showing alleging a risk of serious medical harm. The undersigned presumes that element is met here given Plaintiff's allegations regarding his severe allergic reaction to peanut butter.

To satisfy the subjective element, Plaintiff must show Centurion employees acted with deliberate indifference to that risk. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). This requires Plaintiff to make the following three sub-showings: (1) subjective knowledge of a serious risk of harm; (2) disregard of that

---

[3] Although Centurion also moves for dismissal of Plaintiff's claim for compensatory and punitive damages based on the lack of a more than *de minimis* physical injury, the undersigned need not address that argument given her findings that the deliberate indifference claim fails as a matter of law.

risk; (3) by conduct that is more than mere negligence. *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotations omitted).

Importantly, as to the third prong, allegations of negligence and medical malpractice do not state a plausible claim for relief under the Eighth Amendment or section 1983. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). Instead, "[m]edical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted) (holding Alabama Department of Corrections was not deliberately indifferent to inmates' medical needs). "An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." *Estelle v. Gamble*, 429 U.S. at 105 (holding, as to physician, prisoner's section 1983 complaint was insufficient to show deliberate indifference to his serious medical injury).

The only Centurion employees referenced in Plaintiff's amended complaint are "the nurse who initially responded" and the Director of Nurses, P. Buhler. Plaintiff mentions "the nurse" only once and alleges she arrived on the scene because of Plaintiff's allergic reaction and realized the epinephrine was not in the trauma kit. Plaintiff, however, does not include the nurse as a defendant. Indeed, any such attempt to do so would have been futile. "Implicit in the *Estelle* deliberate

indifference standard is *knowledge* of the *particular medical condition* in order to establish intent or 'a sufficiently culpable state of mind,' *to deny or to delay purposely* 'access to medical care' or intentionally to interfere 'with the treatment once prescribed,' *Estelle*, 429 at 104–05 . . . ." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1191 (11th Cir. 1994) (emphasis in original) (internal citations omitted). Here, however, Plaintiff has not alleged any conduct by the nurse sufficient to show she knew Plaintiff was allergic to peanut butter or that there was no epinephrine in the trauma kit.

To the contrary, Plaintiff's allegations show that the nurse came to his assistance without delay. Thus, he has alleged no facts to show the nurse, even if named as a defendant, was deliberately indifferent to a serious medical need. *See id.* at 1191 (internal quotations omitted) (emphasis in original) ("A defendant must *purposefully ignore or fail to respond* to a prisoner's pain or possible medical need in order for deliberate indifference to be established"). Similarly, although Plaintiff alleges Centurion had prior knowledge of Plaintiff's peanut butter allergy and failed to ensure the trauma kit contained the proper epinephrine, he does not attribute such conduct to any particular employee or state how Centurion derived that knowledge. Such general and conclusory allegations are insufficient to show that any Centurion employee violated Plaintiff's constitutional right.

Because there was no epinephrine in the trauma kit, Plaintiff was taken to the medical building, where he saw Nurse Buhler.  Plaintiff alleges Buhler administered the wrong dose to him.  Plaintiff also alleges Buhler "was responsible for ensuring that the epinephrine is always stocked inside the trauma kit" and "for knowing that the proper dosage of epinephrine is 0.3 mg," ECF Doc. 13 at 10.  The Court, however, already determined that such allegations against Buhler are insufficient to state a claim for deliberate indifference and thus dismissed Buhler as a defendant. ECF Doc. 14 (report and recommendation), ECF Doc. 17 (adopting order).

Namely, Plaintiff's allegations, at best, show that Buhler may have negligently administered the epinephrine, but "negligence does not rise to the level of deliberate indifference."  ECF Doc. 14 at 12; *see Massey v. Montgomery Cty. Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016) ("[T]he bare fact that treatment was ineffectual or not immediately administered does not mean that those responsible for it were deliberately indifferent."); *Herndon v. Whitworth*, 924 F. Supp. 1171, 1174 (N.D. Ga. 1995) (finding lack of showing of deliberate indifference even assuming that defendant provided plaintiff with the wrong medication (citing *Harris*, 941 F.2d at 505)).).

Because Plaintiff has failed to allege a constitutional deprivation, his claim against Centurion, whether based on a policy or custom, or lack of training, necessarily fails as a matter of law.  *See Gish v. Thomas,* 516 F.3d 952, 955 (11th

Cir. 2008) ("Without an underlying violation of Brandon Gish's constitutional rights, Thomas cannot be liable in his individual or official capacity for a failure to train Gilmer and Pike County cannot be liable on the ground that its policy caused a constitutional violation).

### B.   Lack of a Custom or Policy

Even had Plaintiff alleged facts sufficient to establish an underlying constitutional violation, Plaintiff's claim against Centurion would nonetheless fail as a matter of law because Plaintiff has not alleged the existence of a custom or policy that resulted in a constitutional violation.  "A policy is a decision that is officially adopted by the municipality [or equivalent entity], or created by an official of such rank that he or she could be said to be acting on behalf of the municipality . . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997

Nowhere in the amended complaint does Plaintiff allege Centurion had, for instance, a policy of not including epinephrine in its trauma bags or a custom of administering 0.1 mg, instead of 0.3 mg of epinephrine, to prisoners who have an allergic reaction.  Indeed, nowhere does Plaintiff reference any Centurion custom or policy at all.  Plaintiff's failure to do so is fatal to his claim.  *See Massey*, 646 F. App'x at 780 (affirming the District Court's granting of summary judgment for a prison medical services provider because Plaintiff "[did] not allege[] that such a

policy or custom existed"); *Coker v. Corizon Medical Servs.*, No. 5:12-cv-1028-SLB-TMP, 2013 WL 6665581, at *5 (N.D. Ala. Dec. 17, 2013) (dismissing prisoner's Eighth Amendment claim against Corizon for failure to state a claim under section 1915A because "Plaintiff fail[ed] to allege in his complaint that any policy or custom of Corizon, Inc. contributed in any way to the claimed constitutional violations"); *Fullard v. Corizon Health Servs., Inc.,* No. 4:16CV507-MW/CAS, 2017 WL 1017643, ECF Doc. 12 at 5 (N.D. Fla. Feb. 15, 2017), *report and recommendation adopted*, No. 4:16CV507-MW/CAS, 2017 WL 1015846 (N.D. Fla. Mar. 15, 2017) (dismissing claims against Corizon because "there are no facts alleged in the amended complaint which identify a policy of Corizon which was followed by medical staff and which caused Plaintiff injury").

To the contrary, Plaintiff's claims are based on Centurion's failure to follow established policies. For example, Plaintiff alleges Centurion "violated published professional standards of care and the prison's own procedures [f]or medical care" by not including the epinephrine in the trauma kit and by not "properly train[ing] as to dosage amounts." These alleged failures, however, are insufficient to show that a Centurion custom or policy was the "moving force" behind a constitutional violation. *See Wheeler v. Crews*, No. 5:14CV271/WS/CJK, 2015 WL 7731396, at *1 (N.D. Fla. Oct. 26, 2015), *report and recommendation adopted*, No. 5:14CV271-WS-GRJ, 2015 WL 7734141 (N.D. Fla. Nov. 30, 2015) (recommending dismissal

under section 1915(e) of Plaintiff's claim against Corizon—based on the alleged *failure* of Corizon's employees to follow an official policy of Corizon to provide quality care to inmates); *Fullard*,  2017 WL 1017643 (dismissing claims against Corizon based on alleged "fail[ure] to follow proper procedure when [the plaintiff] complained of chest pain").

Moreover, allowing Plaintiff to amend his complaint at this late stage in the proceedings would be futile.  Plaintiff's allegations are based on one isolated incident.  Even if what occurred was, in and of itself, sufficient to constitute a constitutional violation (which it is not), "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability" against a municipality. *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24, (1985) (plurality opinion).  "A pattern of similar constitutional violations ... is 'ordinarily necessary.'" *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 409 (1997)).  "A single incident would not be so pervasive as to be a custom," *Grech v. Clayton County, GA*, 335 F.3d 1326, 1330 n.6 (11th Cir. 2003), because a custom must be such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it."  *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir.1991).

Finally, Plaintiff's allegation that Centurion failed to train its employees (even if based on an underlying constitutional violation) is also insufficient to establish a constitutional violation. "In limited circumstances, a local government's [or its equivalent's] decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. However, to establish deliberate indifference, a plaintiff must show that the municipal "policymakers are on actual or constructive notice that a particular omission in their training program causes [municipal] employees to violate citizens' constitutional rights." *Id.* To show this notice, a plaintiff ordinarily must allege "[a] pattern of similar constitutional violations by untrained employees." *Id.* at 62.

As stated above, Plaintiff's allegation that Centurion failed to properly train its employees "as to dosage amounts," ECF Doc. 13 at 13, is based on a single incident. Thus, Plaintiff has failed to allege any facts sufficient to show that Centurion was on notice of an allegedly unconstitutional failure to train. *Sorensen v. Nocco*, 677 F. App'x 570, 572–73 (11th Cir. 2017) (affirming District Court's granting of Defendant Sheriff's motion to dismiss because Plaintiff's complaint only discussed Plaintiff's deficient treatment, and thus, Plaintiff failed to allege Sheriff "was on actual or constructive notice of the omissions in training or lack of policies").

Plaintiff's naked assertion that Centurion "had actual knowledge that there were deficiencies in the medical care system," is also insufficient to show that Centurion was on notice of an issue with its training. *See Wheeler*, 2016 WL 7404734, at *3 (recommending dismissal under section 1915(e) of Plaintiff's deliberate indifference claim against Corizon and noting that Plaintiff's "bald, general assertion" that "Defendants 'have a history' of failing to train employees" does not establish notice for the need of training).

## IV.    CONCLUSION

Because Plaintiff has not alleged a constitutional deprivation or that a Centurion custom or policy caused a constitutional deprivation, the undersigned finds that Plaintiff's Eighth Amendment claims should be dismissed.

Also, because a deliberate indifference claim is only properly asserted under the Eighth Amendment, Plaintiff's claims under the Fifth and Fourteenth Amendment should also be dismissed. *See Edwards v. Gilbert*, 867 F.2d 1271, 1274 (11th Cir. 1989) (holding that, if an inmate is entitled to protection under the Eighth Amendment, "then [he] is afforded 'no greater [substantive] protection' by the due process clause" (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986))).

Accordingly, it is RESPECTFULLY RECOMMENDED that:

1.    Defendant Centurion's motion to dismiss (ECF Doc. 64) be GRANTED.

2.    The clerk be directed to close the file.

At Pensacola, Florida, this 30th day of December 2020.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**